ATCHISON, T. & S. F. RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. October 16, 1916.)

No. 4541.

MASTER AND SERVANT ☞13—REGULATIONS—HOURS OF SERVICE ACT.

Under Hours of Service Act March 4, 1907, c. 2939, § 2, 34 Stat. 1416 (Comp. St. 1913, § 8678), limiting the hours of service of telegraph operators to only nine hours per day when the office is operated continuously night and day, two telegraph offices, a short distance apart, one of which was used for the day and the other for the night business, must be deemed a single office within the act, the work being transferred from one to the other regularly, and a continuous operation being necessary to the movement of trains, for the act evidently classified offices operated continuously night and day differently from day stations only, because in the former the volume of business would be greater, requiring more concentration, and thus necessitating shorter hours.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. ☞13.]

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Action by the United States against the Atchison, Topeka & Santa Fé Railway Company. There was a judgment for the United States, and defendant brings error. Affirmed.

Robert Dunlap, of Chicago, Ill., for plaintiff in error.

Philip J. Doherty, of Washington, D. C., and W. Boothe Merrill, Asst. U. S. Atty., of Oklahoma City, Okl. (John A. Fain, U. S. Atty., of Lawton, Okl., on the brief), for the United States.

Before HOOK and SMITH, Circuit Judges, and REED, District Judge.

HOOK, Circuit Judge. The question in this case is whether the telegraph offices of the railway company at Guthrie and South Guthrie, Okl., constitute a single "office, place or station," within the meaning of the proviso of section 2 of the Hours of Service Act of March 4, 1907 (34 Stat. 1415), that when operated continuously night and day an operator therein shall not be required or permitted to remain on duty more than 9 hours in any 24-hour period. The trial court held they did.

Both places are in charge of the same station agent. They are four-tenths of a mile apart, are within the corporate limits of the city of Guthrie, and are within the railroad district designated by the company as the Guthrie yard. A telegraph operator works at the Guthrie office from 7 p. m. until 7 a. m. During that period he uses the telegraphic facilities in the direction of all train movements into, through, and out of the Guthrie yard. At 7 in the morning he stops his work and goes to South Guthrie, where he personally delivers the train register, train orders, and block sheet, and all undelivered messages to another operator, who goes on duty there at that hour. The latter receipts for the papers delivered to him and from that time until 7 p. m. performs at South Guthrie the same duties in respect of the telegraphic service and the movements of trains as were performed at Guthrie in the preceding half-day period. When his time is up at 7 in the evening, he goes to Guthrie and delivers the train register, etc., to the operator first mentioned and takes his receipt for them. By such continuous alternation the two operators conduct all the telegraphic business in the yard district affecting the movements of the trains of the company in interstate commerce and each of them remains on duty 12 hours. The passenger station is at Guthrie. At South Guthrie, down in the yard, no tickets are sold and no passengers or freight are received or discharged. Each place has its separate complete mechanical equipment for telegraphic work, and each has its separate signal call. They are separately designated and numbered as stations in the company's official list; and in the employés' time-table Guthrie is designated as a night office and South Guthrie as a day office for telegraphic purposes. This course of handling the business was adopted by the company for reasons of convenience, not to evade any law. It began before the passage of the Hours of Service Act, and has been shown in its customary railroad publications.

We think there is such an identity of service performed at the two places and such a close connection between them in the methods of performance that they are in substance and effect a single office, place, or station within the meaning of the statute. While it is not our province to supply apparent omissions in legislation, yet the object sought by it should always be regarded in the construction of the language employed. It was not intended by the Hours of Service Act to burden the railroads to a degree unnecessary to the remedial end in view. In a measure the provision as to telegraph and telephone operators was framed and has been administered along the lines of established railroad practice. But it should not be inferred from this that all exceptional conditions existing prior to the act were approved and confirmed.

In the formulation of the statute it was apparent that some classification of the telegraphic offices, places, and stations was proper in prescribing the duration of permissible service without intervals for rest. Many were naturally unimportant stations, at which the duties were light and unfatiguing. At other more important places the volume and character of the work required a larger degree of care and engrossing attention of the operator. A logical classification, conforming to the practice of the railroads and having regard for their experience of the necessities of the service, was into "daytime" and "night and day" offices; and a maximum of service in a 24-hour period of 13 hours for the former and 9 hours for the latter was prescribed. Obviously the intent of the statute would be defeated if the work at a place of a character. requiring attention both day and night were. divided between two shifts and performed with separate instruments installed in near proximity. And what could not be done as a new departure would be equally inadmissible as an old custom. The division of the night and day control of train movements in a single restricted district between telegraphic installations in different parts of the same building, or on the north and south sides of the same street, with an oscillation of the paper records and undelivered messages back and forth, would quite clearly not divide the "place" within the intent of the statute. The case here is not different in principle. The work of the two operators, one at Guthrie and the other at South Guthrie, was a unit in all practical aspects, and it was so recognized in the practice of the company. Doubtless there may be in extensive terminals separate offices doing different work, or work of a supplementary character, which should not collectively be regarded as one. It is also true that, when a daytime office is closed, the duties which the operator or his successor would have performed, had it remained open, are so far as necessary otherwise cared for. But the difference between such conditions and those which prevailed at the Guthrie yard is manifest. The meaning of an "office, place or station" within the statute does not depend alone on foot measure, but involves other considerations as well—the character. of the work performed, its scope, to what applied, how it is done, and whether, consistently with the remedial object, it is naturally separable or unitary and continuous.

The judgment is affirmed.